THE PEOPLE v. HENRY LITTLE.

86  125
112  372
112  376

*Municipal ordinances—Fast driving—Ambulance.*

1. The public interests do not demand that, in order to afford prompt relief to one person requiring the use of a city ambulance, other persons may be run down and injured by the fast and reckless rate of speed of the ambulance in going to the assistance of such person.

2. An ambulance is within the terms and scope of a city ordinance prohibiting the driving of any horse, carriage, sleigh, or other vehicle through any street or avenue in the city at a faster rate than six miles per hour, and the effect of such an ordinance is not modified by a subsequent ordinance giving to every ambulance or other vehicle used for the transportation of sick and wounded persons and animals the right of way over all other vehicles upon every public street.

*Certiorari* to recorder's court of Detroit to review proceedings resulting in the conviction of respondent for violating a municipal ordinance prohibiting driving at a greater speed than six miles an hour. (Chambers, J.) Argued May 6, 1891. Decided May 15, 1891. Conviction affirmed. The facts are stated in the opinion.

*James H. McMillan,* for respondent, contended:

1. In the case of *Napman v. People,* 19 Mich. 355, this Court decided that the ordinances of the city of Detroit stand on a

similar footing with statutes, and that they are matters of judicial notice; and, in view of this decision, if the Court has not passed directly upon the question of the right of fire apparatus to go at a rate of speed greater than six miles an hour, it has certainly, in the case of *Coots v. City of Detroit*, 75 Mich. 628, taken judicial notice of the necessity for a high rate of speed.

2. In support of the proposition that the right of way ordinance modifies the one against fast driving, counsel cited *Dewey v. Manufacturing Co.*, 42 Mich. 402.

*Charles W. Casgrain* and *Charles S. McDonald*, for the people, contended:

1. A street sprinkler has been declared a "public vehicle," within the terms of an ordinance imposing a license upon public vehicles using streets for trade or traffic; citing *St. Louis v. Woodruff*, 71 Mo. 92; and a bicycle was held to be a "carriage," within a statute forbidding fast driving, in *Taylor v. Goodwin*, L. R. 4 Q. B. Div. 228.

CHAMPLIN, C. J. The charter of the city of Detroit confers upon the common council of the city authority. "to prohibit and prevent · racing or fast and dangerous driving and riding" within the city limits. Acting in pursuance of this authority, the common council, on July 1, 1890, duly enacted and published the following ordinance:

"No person shall ride or drive any horse, carriage, sleigh, or other vehicle through any street or avenue in this city at a faster rate than six miles per hour. · Such person shall slacken the speed of said horse over any crossing, cross-walk, or intersecting street of said city when any person or persons are upon the same, whenever requested to do so by the police officer who may be in charge of said street, crossing, or cross-walk: *Provided,* that this section shall not apply to the driving of cutters and sleighs in a southerly direction through Cass avenue north of Ledyard street, between the hours of two and five in the afternoon of any day except Sunday."

Another section of the same ordinance provided that any person who violated its provisions should be punished

by a fine not exceeding $100 and costs of prosecution, and that the offender might be imprisoned in the Detroit House of Correction until the payment thereof, provided such imprisonment should not exceed six months:

The common council, in 1890, also duly enacted another ordinance, section 2 of which reads as follows:

"Every ambulance or other vehicle used for the transportation of sick and wounded persons and animals shall be entitled to the right of way over all other vehicles upon every public street, highway, and place. No person shall willfully interfere with or retard or obstruct or impede the progress of any such ambulance or vehicle thereon, or shall willfully injure the' same, or willfully drive any vehicle in collision therewith."

On December 6, 1890, at about 3 o'clock in the afternoon, Henry Little drove a horse attached to the Grace Hospital ambulance up Woodward avenue, one of the main thoroughfares in the city of Detroit, at a speed of 12 miles an hour. In doing so the ambulance collided with a vehicle, throwing the driver out and injuring him. He was complained of in the recorder's court for a violation of the ordinance prohibiting driving at a greater rate of speed than six miles an hour, and was convicted and fined. The case is brought to this Court by *certiorari*, and the questions raised by the record are:

1. Is it a reasonable construction of the ordinance against fast driving to include ambulances within its scope?
2. If it is, then is not the effect of the ordinance modified by the later ordinance, giving to ambulances the right of way?

The first question should be answered in the affirmative. The ambulance is within its terms, and there exists no reason why it should not be included in its scope.

It is claimed by counsel for respondent that—

"Experience has shown that in every large city the con-

ditions are such that accidents frequently occur of such a nature that the immediate attendance of a surgeon is a matter of the utmost necessity, when a minute one way or the other may mean life or death to the injured person. And it is this experience that has led the charitable institutions of Detroit to organize their ambulance services. There are of necessity few of these ambulance stations in proportion to the territory which they are called upon to cover, and, if the right to respond as rapidly as possible to emergency calls be denied them, a large part, if not the whole, of their usefulness is taken away."

This argument ought not to prevail against the ordinance, which was enacted to guard against accidents very liable to occur frequently from fast driving through the streets of a city. Respondent in his affidavit for *certiorari* claims that he had a right to drive 12 miles an hour, and that he was only driving at that rate. That it is reckless to drive at such rate of speed through the streets of a city where many people are passing in carriages, and crossing the streets upon foot, is self-evident. It jeopardizes human life. Men, women, and children may be run down, and injured or killed by such vehicles driven at such high rate of speed. It would be bad policy for a city to authorize a rate of speed which would be so liable to cause accidents, for the sake of affording more prompt relief to some one injured by an accident. The public interests do not demand that, in order to afford prompt relief to one person requiring the use of an ambulance, other persons may be run down and injured by the fast and reckless rate of speed of the ambulance in going to the assistance of the person injured. The whole matter was left by the statute in the control of the common council; and, looking to the safety of people in the use of the streets, they have seen fit to prohibit driving at a faster rate of speed than six miles an hour.

In considering the claim made by the respondent it is

proper to note that the ordinance which gives to ambulances the right of way over other vehicles recognizes this right in the transportation of persons *and animals,* and, if the argument for great haste and speed drawn from emergency is to be given any force, it would apply equally well to an aubulance answering a call for a sick or injured dog as for a person. It can hardly be supposed that the common council, in prohibiting driving at a speed exceeding six miles an hour, intended to except an ambulance going to the relief of an injured animal, or contemplated that such ambulance might drive through the streets of the city at the rate of twelve miles an hour.

The second question should be answered in the negative. The ordinance giving the right of way to ambulances transporting sick or injured persons or animals has no reference to the speed at which they may be transported, and much less to the speed at which the ambulance may be driven when not transporting such persons or animals. The ordinance under which respondent was convicted was a reasonable one, and includes within its letter and spirit the vehicle which respondent. was so recklessly driving at the time alleged in the complaint.

The judgment is affirmed.

The other Justices concurred.